# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JERRY LEON WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:16-cv-00993-JEO |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

Plaintiff Jerry Leon Williams brings this action pursuant to 42 U.S.C. §

405(g), seeking review of the final decision of the Acting Commissioner of Social

Security ("Commissioner")[1] denying his applications for disability insurance

benefits ("DIB") and supplemental security income ("SSI").  (Doc. 1).[2]  The case

has been assigned to the undersigned United States Magistrate Judge pursuant to

---

[1] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. *See* https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

[2] References herein to "Doc(s). _" are to the documents numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

this court's general order of reference. The parties have consented to the jurisdiction of this court for disposition of the matter. (Doc. 14). Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability, DIB, and SSI, alleging disability beginning January 15, 2013. (R. 124, 131).[3] His claims were denied initially on April 19, 2013. (R. 77). Plaintiff then requested a hearing by an Administrative Law Judge ("ALJ"). (R. 85). A hearing was held on April 4, 2014. (R. 31). The ALJ denied Plaintiff's request for DIB and SSI on October 24, 2014. (R. 6). Review by the Appeals Council was requested and denied. (R. 1). Plaintiff filed this action on June 16, 2016. (Doc. 1 at 1). This matter is properly before the court for review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The

---

[3] References herein to "R. _" are to the page numbers of the administrative record.

court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *See Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for DIB and SSI under the Social Security Act, a claimant must show the inability to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382(a)(3)(A). A physical or mental impairment is "an impairment that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382a(3)(D).

Determination of disability under the Social Security Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)(4). Specifically, the Commissioner must determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a sever medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a Listing and meets the duration requirements; (4) can perform his past relevant work, in light of his residual functional capacity; and (5) can make an adjustment to other work, in light of his residual functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014)[4] (citing 20 C.F.R. § 404.1520(a)(4)). Plaintiff bears the burden of proving that he was disabled within the meaning of the Social Security Act. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The applicable regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id.*

## IV. FINDINGS OF THE ALJ

Plaintiff was 60 years old at the time of the ALJ's decision. (R. 5, 76). He possesses a 10th grade education. (R. 166). He has worked as a brick mason, a

---

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

concrete finisher, and a packer of coat hangers.  (R. 34-35). He has been

unemployed since 2013.  (R. 40).  As noted above, his alleged disability onset date

is January 15, 2013.  (R. 37, 79).  Plaintiff alleges his disability is due to arthritis in

his shoulder, back problems, high blood pressure, and leg problems.  (R. 165).  He

initially experienced back pain when he bent over and tried to pick up a box at

work in about November 2012.  (R. 18).  He "heard and felt a pop in his mid-

back."  (*Id*.)

The ALJ found that Plaintiff's severe impairment is lumbar spine

degenerative joint disease.  (R. 11).  The ALJ further found that Plaintiff has

hypertension that is not "severe," and that there is no medical evidence establishing

alleged shoulder, leg, and neuropathy problems.  (R. 17).

After careful consideration of Plaintiff's impairments, the ALJ found that

Plaintiff has the residual functional capacity ("RFC") to perform the full range of

medium work as defined in 20 C.F.R. 404.1567(c).[5]  (R. 17).  Premised on the

testimony of the vocational expert at the hearing, the ALJ then determined that

Plaintiff could perform his past relevant work because the work does not require

the performance of activities precluded by his RFC.  (R. 22).

---

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine
that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

# V. DISCUSSION

Plaintiff asserts five arguments in support of reversal and remand of his case: (1) the ALJ improperly accepted the opinion of Dr. Thomas A. Wilson, a workers compensation treating physician, as binding (doc. 10 at 13); (2) the ALJ improperly evaluated the opinion of Dr. Zakir Naeem Khan, a consultative physical examiner (*id.* at 13); (3) the ALJ improperly evaluated the opinion of Dr. Odjegba, Plaintiff's present treating physician (*id.* at 15); (4) the ALJ's finding that Plaintiff is not precluded from past work is not supported by substantial evidence (*id.* at 16); and (5) the ALJ erred in not identifying any other medium jobs Plaintiff can perform (*id.* at 17).

## A. The ALJ properly evaluated Dr. Wilson's opinion and did not accept the opinion as binding.

Plaintiff initially argues that the ALJ erred in evaluating Dr. Wilson's opinion because he improperly accepted Dr. Wilson's statement that Plaintiff had only a five percent impairment rating and could return to work without restriction as binding on his decision. (Doc. 10 at 12-13). Plaintiff contends it also was error for the ALJ to accept as binding a physician's statement that includes a workers compensation ratings finding that a claimant is not disabled. (*Id.* at 13). The Commissioner argues that the ALJ properly evaluated Dr. Wilson's opinion and found that the opinion supports his RFC assessment. (Doc. 11 at 8).

The Eleventh Circuit has held that medical source statements that a claimant is disabled for purposes of workers compensation impairment ratings are not binding on the ALJ and that the Social Security Act's definition of disability controls because the ultimate issue of disability is left to the Commissioner. *Symonds v. Astrue*, 448 F. App'x 10, 13 (11th Cir. 2011). Here, however, there is nothing in the ALJ's opinion to suggest that he accepted Dr. Wilson's opinion as binding. The ALJ stated that he gave the opinion a "great deal of weight" because Dr. Wilson was a treating specialist. (R. 14). The ALJ did not indicate in any manner that he considered the opinion to be binding.

In addition, while the ALJ's analysis primarily relies on Dr. Wilson's release of Plaintiff to medium past work, that opinion is supported by medical evidence. Dr. Wilson treated Plaintiff from February 19, 2013 to April 30, 2013 for persistent back and leg pain secondary to a work-related back injury, and ultimately released him to past work. (R. 326). An MRI that was performed during that time shows some degenerative changes with increased lumbar lordosis, but no significant disc herniation, nerve root encroachment, or acute bony injury. (R. 323). Dr. Wilson noted that the MRI showed only age-appropriate degenerative changes. (R. 325). Additionally, treatment notes from Plaintiff's June 2013 visits to Quality of Life Health Services, Inc. ("Quality of Life") show that Plaintiff's x-rays did not warrant disability when Plaintiff asked the Certified Registered Nurse Practitioner

("CRNP") to complete disability forms related to his workers compensation claim. (R. 373). Plaintiff's August 2013 records from Quality of Life also show that the CRNP attributed Plaintiff's complaints to "normal aspects of aging and nothing acute."[6] (R. 382). During an examination in September 2013, Plaintiff inconsistently exhibited negative straight leg raising and stable strength while making complaints of pain at Level "8". (R. 321). Plaintiff also failed to cooperate with a functional capacity evaluation that was performed in April 26, 2013. (R. 326 & 328). Accordingly, substantial evidence supports the ALJ's decision to primarily rely upon Dr. Wilson's medical opinion. The court finds that the ALJ properly evaluated Dr. Wilson's opinion.

**B.      The ALJ properly evaluated the opinion of Dr. Zakir Naeem Khan.**

Plaintiff next challenges the ALJ's reasoning to discredit the opinion of consultative physical examiner Dr. Zakir Naeem Khan, asserting that the ALJ premised his assessment of Dr. Khan's opinion on the fact that Plaintiff would be released back to work the following month by Dr. Wilson. (Doc. 10 at 13). In support of this argument, Plaintiff cites *Symonds v. Astrue*, 448 F. App'x 10, 13 (11th Cir. 2011). The Commissioner does not directly respond to this argument.

---

[6] The court does note that the CRNP did recommend that Plaintiff have a repeat MRI and that he be seen by a neurosurgeon. (R. 382). Plaintiff apparently was unable was unable to obtain this additional care. (*Id.*)

On March 26, 2013, Dr. Khan noted that Plaintiff was unable to squat, had a limping gait, was unable to heel or toe walk, and might have difficulty standing, walking, and lifting. (R. 287). Plaintiff reported pain in his lumbar spine with radiation into both feet. (R. 285). There was no tenderness or palpitation over the spine, and he had a normal range of motion of the lumbar spine with negative straight leg raising bilaterally. (R. 286). He had normal range of motion in all joints in the upper and lower extremities. (R. 287).

The ALJ considered the opinion of Dr. Khan, but decided the opinion was not determinative because Plaintiff was receiving injections and treatment and would be released by Dr. Wilson in the next month to return to past medium work. (R. 18). In sum, the ALJ found Dr. Kahn's opinion was rendered before the point where Plaintiff was determined to have improved and, therefore, not determinative. The court agrees.

The ALJ must give the opinion of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). However, as a consultative medical examiner, Dr. Khan is not a treating medical physician entitled to the same deference. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) ("Generally, a treating doctor's opinion is entitled to more weight than a consulting doctor."). Instead, Dr. Khan was a one-time consultative medical

examiner.  The ALJ properly considered his opinion and determined the weight it was due.  That is exactly what he is required to do.  To the extent Plaintiff argues that it was improper for the ALJ to discount Dr. Khan under *Symonds* (doc. 10 at 13), the court finds otherwise.  Nothing in *Symonds* demonstrates fault in the ALJ's reasoning.  He did not substitute improper considerations or definitions for the Social Security Act's definition of disability.  *See Symonds*, 448 F. App'x at 13.  Instead, he noted that Dr. Khan's opinion preceded the point where Plaintiff "was deemed improved" – a correct assessment under the evidence in the record.  Therefore, the ALJ properly evaluated Dr. Khan's opinion.

## C.     The ALJ properly evaluated the opinion of Dr. Odjegba regarding Plaintiff's RFC.

Plaintiff next argues that the ALJ improperly evaluated Dr. Ochuko Odjegba's opinion and that the ALJ's statement that the opinion appears "not to be the doctor's own opinion, but a reflection of the claimant's subjective allegations made to him" is speculative and argumentative.  (Doc. 10 at 15).  The Commissioner argues that substantial evidence supports the ALJ's decision to afford Dr. Odjegba's opinion little weight.[7]  (Doc. 11 at 6).

In determining the weight to afford a medical opinion, the ALJ must consider a variety of factors including, but not limited to, the nature of the medical

---

[7] The decision of the ALJ and the briefs of the parties oftentimes refer to this evidence as Dr. Odjegba's opinion or opinions.  For convenience and clarity, the court will refer to the same as a single opinion.

source's relationship with the claimant, the length of the relationship, the source's specialty, and the opinion's supportability and consistency with the record. 20 C.F.R. §§ 404.1527(c), 416.927(c). As previously noted, the ALJ must give the opinion of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004). Good cause exists where (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

The disputed evidence is Dr. Odjegba's Physical Residual Functional Capacity Assessment for Plaintiff and accompanying letter that was completed on or about March 3, 2014. (R. 330-42). In the RFC, Dr. Odjegba states that Plaintiff could frequently lift or carry less than 10 pounds, could stand or walk with normal breaks for a total of less than two hours a day, could sit with normal breaks for a total of less than six hours in an eight hour work day, would have limited pushing or pulling in his lower extremities because of extreme back pain and neuropathy involving the lower extremities, could occasionally balance, could never climb ramps or stairs, stoop, kneel, crouch, or crawl, and would be limited in reaching in all directions. (R. 335-36). Dr. Odjegba also states that Plaintiff

should avoid concentrated exposure to extreme cold and heat, wetness, humidity, noise, vibrations, fumes, odors, dusts, gases, and poor ventilation, and should avoid all exposure to hazards such as machinery and heights. (R. 337). The ALJ rejected this evidence, stating:

> I have not given these opinions weight, as they are not supported by the doctor's own records, and they are inconsistent with his diagnoses and clinical finding[s]. Further, they appear not to be the doctor's own opinion, but a reflection of the claimant's subjective allegations made to him. The clinical findings are not consistent with the allegations (often 10/10 pain) and the claimant has shown to be an unreliable reporter on many occasions. …

(R. 20). The ALJ also stated:

> [Dr. Odjegba's] opinion is unsupported by objective medical evidence. It is emphasized that the forms completed were through attorney referral. There is no residual work injury to account for severe limitations. The objective evidence of record shows that the claimant has mild changes. His opinion lacks persuasive weight. The claimant has no neurological deficits, muscle atrophy, or significant weight loss, generally associated with protracted pain, at a severe level.

(R. 22).

The ALJ properly evaluated Dr. Odjegba's opinion in this instance. In his decision, the ALJ stated that his reasons for giving the opinion no weight included the fact that the opinion was "not supported by [Dr. Odjegba's] own records, and w[as] inconsistent with his diagnosis and clinical finding[s]." (R. 20). Substantial evidence supports this decision, as the record shows Dr. Odjegba's medical opinion was contradicted by other medical evidence and his own records.

In September 2013, Dr. Odjegba saw Plaintiff and observed that he had severe tenderness, positive straight leg raising, and a pain level of "8". (R. 393). Dr. Odjegba diagnosed Plaintiff with lumbago. He did not enter any neurological observations or identify any findings consistent with neuropathy. (R. 390-94). Three days later, Plaintiff reported to Gadsden Regional Medical Center. He was assessed with chronic low back pain. (R. 349). During the evaluation, the following was noted: "Negative straight leg raise bilaterally. Motor strength intac lower extremities bilaterally. Sensory exam intact throughout. Patella and Achilles reflexes intact bilaterally. Mild spasm bilateral paralumbar musculature noted." (*Id*.) He was observed to be in no acute distress. (*Id*.)

In November 2013, Plaintiff returned to Dr. Odjegba. Plaintiff stated that he was experiencing pain with a severity level of 10 and that his symptoms were worsening. (R. 401). Dr. Odjegba noted that Plaintiff was positive for weakness and numbness in the extremities. (R. 403). However, he also wrote that Plaintiff was negative for muscle weakness. (*Id*.) Further, he noted that there was back tenderness and spasm. (*Id*.) He did not identify any straight leg raising pain and he did not document any other weakness or neurological deficit. (*Id.*)

In February 2014, Plaintiff returned to Dr. Odjegba and alleged he could not afford pain or hypertension medications.[8]  (R. 406).  However, despite not having taken medications for the past two days, Plaintiff's pain level had dropped to a "5", and Dr. Odjegba found no back or lower extremity findings.  (R. 408). Plaintiff again was diagnosed with lumbago and hypertension, but not neuropathy. (R. 409).  Plaintiff was educated on the need for medication compliance.  (*Id.*)

In March 2014, Plaintiff returned to Dr. Odjegba alleging a pain level of "8" that was made worse with lifting and bending.  Dr. Odjegba wrote that the pain was actually at level "6".  (*Compare* R. 411 & 413).  He also noted that Plaintiff's spine was tender, but there were no other noted clinical findings.  (*Id.*)  Plaintiff was to return for a "recheck" in three months.  (R. 414).

Two weeks later, Plaintiff returned to Dr. Odjegba alleging a pain level of "8", but the staff recorded the level as "5".  (*Compare* R. 416 & 418).  Plaintiff was not experiencing spasms, but did have a positive pain response to a straight leg raising test.  The only diagnosis was chronic lumbago. (R. 418-419).  Dr. Odjegba continued Plaintiff on his medications, and completed and filed various insurance forms.  (R. 419).  Plaintiff again was to return for a "recheck" in three months.  (R. 419).

---

[8] This is a recurrent theme throughout Plaintiff's medical records. There is no evidence in the record that Plaintiff sought charitable or other assistance to obtain medications.

The Physical Residual Functional Capacity Assessment done by Dr. Odjegba contradicts many of the above records. For instance, despite the fact that Dr. Odjegba claims in the assessment that Plaintiff suffers from neuropathy, his records fail to show that he ever observed any manifestation of neuropathy. (*See* R. 333). Dr. Odjegba also notes in the assessment that Plaintiff's lower extremities are limited due to "extreme back pain" even though most of his records lack any extremity findings and his records typically indicate pain at about "5-6". Additionally, this evidence indicates Plaintiff is not a reliable source of information. Thus, the ALJ had good cause to attribute no weight to Dr. Odjegba's opinion.

**D.      Substantial Evidence supports the ALJ's finding that Plaintiff is not precluded from past work.**

Plaintiff next argues that the ALJ's finding that he is not precluded from past work is not supported by substantial evidence because the ALJ improperly applied the pain standard. (Doc. 10 at 15-17). The Commissioner asserts that the ALJ properly applied the pain standard.

The ALJ determined that Plaintiff had a medically determinable impairment that could reasonably be expected to cause the alleged pain, but that Plaintiff's subjective testimony about his pain was not credible. (R. 34). When a claimant alleges disability through subjective complaints of pain or other symptoms, the ALJ must determine (1) whether the claimant established an impairment that could

reasonably be expected to produce the pain or other symptoms alleged, and (2) the extent that such symptoms limit the claimant's capacity to work based on an evaluation of the intensity and persistence of the symptoms and the limiting effects of the symptoms. *See* 20 C.F.R. 404.1529(b), (c), 416.929(b), (c); SSR 16-3p, 2016 WL 1020935, at *2 (Mar. 16, 2016). The claimant's subjective testimony, supported by medical evidence that satisfies the standard, is sufficient to support a finding of disability. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). "If the [Commissioner] refuses to credit such testimony, he must articulate explicit and adequate reasons." *Id.*

The Eleventh Circuit has held that credibility determinations are the province of the ALJ, and that a clearly articulated credibility finding supported by substantial evidence will not be disturbed. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014). "The question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). In determining credibility, the ALJ should consider any relevant evidence in the record, including objective medical evidence, the claimant's own statements, inconsistencies in the evidence, and evidence provided by physicians or other persons. *See* 20 C.F.R. 404.1529(c)(4), 416.929(c)(4); SSR 16-3p, at *4-5 (Mar. 16, 2016).

Here, Plaintiff testified that he has constant lower back pain radiating down both legs to his feet and degenerative disc disease. (R. 38-39). He claims he can stand for 10-15 minutes, walk for less than a block, and sit for 20 minutes. (R. 39). He lies down for seven hours a day. (R. 40). He asserts that his pain affects his focus and concentration, and that he cannot study the Bible and cannot read a whole chapter at a time. (R. 41). Despite this, Plaintiff preaches at church and states that when the "spirit is on him his pain goes away." (R. 329). He claims he cannot bend, squat, or stoop and that he cannot lift overhead or hold objects in front of him because it hurts his back. (R. 42-43). Lifting is difficult for him. (R. 43). His average pain level is an "8" with medication and "10" without. (R. 44). His hypertension is uncontrolled even when he is on the medication. (R. 45). He uses a cane that he purchased on his own, and claims Dr. Odjegba told him to get a walker. (R. 47). He does not cook, clean, or go to the mall or to social events. (R. 48). He claims he has a disc pressing on his sciatic nerve that causes his back pain. (R. 50). He received injections twice and claims they did not help his condition. (R. 50-51). He does exercises daily. (R. 51).

Substantial evidence supports the ALJ's determination that Plaintiff's subjective complaints were not entirely credible. In his decision, the ALJ discussed the objective medical evidence that contradicts Plaintiff's allegations. Plaintiff testified that Dr. Odjegba stated he should get a walker. However,

nothing in the record suggests that is true.  On February 19, 2013, Dr. Wilson reviewed a MRI scan showing some degenerative changes in Plaintiff's lumbar spine and increased lumbar lordosis.  (R. 320).  On April 30, 2013, a CT myelogram demonstrated age-appropriate degenerative changes.  (R. 325).  After a functional capacity evaluation, Dr. Wilson determined the evaluation was invalid because of submaximal effort on Plaintiff's part (R. 328), and that plaintiff had an overall impairment rating of 5% of the whole person based upon degenerative changes.  (R. 327).  Dr. Wilson opined that Plaintiff could return to work without restriction based on the structural integrity of his spine.  (R. 326).

On September 26, 2013, Plaintiff reported to the emergency room of Gadsden Regional Medical Center.  (R. 346).  The medical records state that Plaintiff was able to ambulate independently and that he could perform all daily living activities without assistance.  (R. 346).  Plaintiff had negative straight leg raising tests and his motor strength was intact in his extremities. (R. 349).

Treatment notes from Quality of Life also contradict Plaintiff's subjective testimony.  June 17, 2013 x-rays show that Plaintiff was not injured enough to be disabled for purposes of workers compensation.  (R. 373).  A July 8, 2013 lumbar spine x-ray shows only mild degenerative joint disease and mild spondylosis.  (R. 377).  Neurology notes from August 5, 2013, show that Plaintiff's circumstances

were in the "normal aspects of aging" and that there was "nothing acute" about his situation.  (R. 382).

The ALJ also considered Plaintiff's failure to cooperate with treatment. Plaintiff failed to cooperate with his Functional Capacity Evaluation and requested to discontinue the entire evaluation.  (R. 328).  Plaintiff reported that he was not doing the home exercises that were part of his physical therapy treatment.  (R. 329).  Treatment notes also show that Plaintiff did not return calls when he was scheduled for blocks, and that medical staff contacted his attorney to intervene. (R. 311).  His September 16, 2013 treatment notes show that Plaintiff had not gotten iron supplements as he was directed.  (R. 386).  When this was discussed with him, he stated he would probably not get them.  (*Id*.)  Plaintiff's failure to cooperate with treatment undermines the Plaintiff's serious pain allegations, especially when Plaintiff alleges the maximum degree of pain.

Finally, the ALJ discussed Plaintiff's daily activities.  Plaintiff reported that he watches television, reads the Bible, has no problem with personal care including dressing, bathing, shaving, feeding himself, or using the toilet.  (R. 155).  He does not need reminders to take care of himself or to take his medicine. (R. 156).  He goes out two or three times a week and rides in a car.  (R. 157).  He sometimes drives.  (*Id.*)  He occasionally shops in stores for food. (*Id.*)  He can pay bills, count change, and handle a savings account.  (R. 158).  He can pay attention all of

the time and follow written and spoken instructions "all right," but does not always finish what he starts. (R. 159). He gets along "fine" with authority figures, handles stress and changes in routine, and does not use any assistive devices. (R. 160).

The ALJ properly evaluated Plaintiff's daily activities. The fact that Plaintiff can pay attention all of the time indicates that his pain is not as debilitating as he alleges. His pain also is not debilitating enough to stop him from taking care of himself, going out, or shopping. Based on Plaintiff's reporting of his daily activities, the court finds substantial evidence supports the ALJ's decision that Plaintiff's pain testimony is not entirely credible. Considering all the evidence, the court cannot say that "the ALJ was wrong to discredit [Plaintiff's] testimony." *Werner*, 421 F. App'x at 939.

## E. The ALJ was not required to identify other medium level jobs.

Plaintiff next contends that the ALJ erred by failing to identify other medium level jobs he could perform. (Doc. 10 at 17). The Commissioner does not directly address this contention. Plaintiff concedes that his past jobs are typical of most medium work jobs, but argues that there is not substantial evidence that he can perform any other medium jobs. Plaintiff also argues that the ALJ did not ask the Vocational Expert ("VE") to identify any other medium jobs he can perform.

The ALJ compared the claimant's RFC, which included the ability to perform the full range of medium work, with the physical and mental demands of Plaintiff's past work and concluded that the VE's testimony was consistent with the Dictionary of Occupational Titles. (R.22). The ALJ further stated that the entire job base identified by Medical-Vocational Guideline 203.00 is available to Plaintiff. (*Id.*)

Determining whether Plaintiff can perform any other work considering his RFC, age, education, and work experience is the last step in the five-step evaluation process. However, the ALJ found in the fourth step that Plaintiff was able to perform his past relevant work. Therefore, there was no reason for the ALJ to continue on to step five. Because substantial evidence supports the ALJ's finding about past work, the ALJ properly did not identify other medium work jobs Plaintiff can perform.

**F.      The "accept as true" doctrine is not binding here.**

Lastly, Plaintiff argues the ALJ did not properly consider his symptoms and, therefore, his complaints of pain must be accepted as a matter of law. (Doc. 10 at 16). The Commissioner responds that the ALJ's evaluation of Plaintiff's symptoms was correct and the "accept as true" doctrine is not binding precedent. (Doc. 11 at 14-16). The court agrees with the Commissioner on both counts.

First, as discussed previously, the court finds that the ALJ did properly evaluate Plaintiff's symptoms.  Second, the court finds that even if the ALJ failed to properly consider Plaintiff's symptoms, the correct course of action would be to remand the matter to the Commissioner for further consideration, not to accept his complaints of pain as true.  *See Lawyton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (noting that without accepting testimony as true, "our earlier decisions had remanded cases to the agency when there was a failure to provide an adequate credibility determination"); *Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828, 833 n.1 (11th Cir. 2011) (remanding the case for further factual findings because the ALJ failed to explain the weight he gave to the treating physician's opinion); *Fain v. Colvin*, No. 4:14-cv-787, 2014 WL 7336927, at *5 (N.D. Ala. Dec. 23, 2014) (recognizing that the "accept as true" doctrine is not good law in the Eleventh Circuit).

## VI.  CONCLUSION

For the reasons set forth above, the court finds that the decision of the Commissioner is due to be affirmed.  An appropriate order will be entered.

**DATED** this 17th day of November, 2017.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge